1
2
3
4
5
6
7

8 **IN THE UNITED STATES DISTRICT COURT**

9 **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| 11 CLAYTON GUNN, JR., | No. 2:19-CV-1729-KJM-DMC |
| 12 Plaintiff, | |
| 13 v. | FINDINGS AND RECOMMENDATIONS |
| 14 COUNTY OF BUTTE, et al., | |
| 15 Defendants. | |

16

17        Plaintiff, who is proceeding pro se, brings this civil action. Pending before the

18 Court is the motion to dismiss, ECF No. 20, filed by Defendants County of Butte, Butte County

19 Sheriff's Department, Butte County District Attorney's Office, Kory Honea, Vaj Thao, Michael

20 Ramsey, and Michael F. Tufaro (County Defendants).[1]

21 / / /

22 / / /

23 / / /

24 / / /

25 / / /

26 / / /

27        [1]    Defendant Butte County Superior Court has not been served. Defendant
California Forensic Medical Group has filed an answer through separate counsel. See ECF No.
28 26.

1

1

## I. PLAINTIFF'S ALLEGATIONS

2          This action proceeds on Plaintiff's first amended complaint.  See ECF No. 16.

3  Plaintiff begins his factual allegations with events from the mid-1980s.  See id. at 4.  According

4  to Plaintiff, since the mid-1980s, Defendant Ramsey's father, Chet Ramsey, became close friends

5  with Leah Martin Gunn, who was Plaintiff's grandmother.  See id.  Plaintiff states that Chet

6  would often bring Leah large bottles of alcohol.  See id. at 4-5.  Plaintiff contends that, "at some

7  point," he and his father, Clayton Gunn, Sr., learned that Chet was "getting Leah intoxicated and

8  getting her to sigh [sic] documents that were fraudulent."  Id. at 5.  Plaintiff characterizes these

9  allegedly fraudulent documents as "double leases" on gravel areas of the family ranch, known as

10  the "Lucky 7 Ranch."  Id.  Plaintiff states: "Ultimately the Gunn family found themselves in a

11  situation where they would be forced to settle the double leases resulting in sever [sic] losses over

12  gravel royalties owed to the Lucky 7 Ranch."  Id.  Plaintiff adds:

13
14
15
16

> Upon learning of Chet Ramsey's activities, he was 'kicked off' the ranch
> by Clayton Gunn Sr. and Plaintiff.  This resulted in Chet Ramsey being
> disgruntled to the point of resentment and retribution primarily towards
> Plaintiff Clayton Gunn Jr.  Part of this retribution was to notify his son
> Defendant Michal Ramsey of what had occurred.  Consequently,
> Defendant Michal Ramsey has taken measures described herein as part of
> his father's retribution campaign.

17          Id.

18          Plaintiff states that a criminal complaint was filed against him on August 27, 1996,

19  by the Butte County District Attorney, Defendant Michal Ramsey, for theft by false pretenses.  Id.

20  According to Plaintiff, he pleaded guilty to a misdemeanor and agreed to pay $3,600 in restitution

21  within 120 days with the understanding that, if he failed to do so, the matter would be re-charged

22  as a felony.  See id.  Plaintiff states that he was unable to pay the full restitution amount within

23  the 120-day period and, as a result, he was charged with and later convicted of a felony violation.

24  See id.  Plaintiff contends that he did not commit the alleged crime and that the charged were

25  unfounded and should not have been brought.  See id. at 6.  Plaintiff then outlines a number of

26  alleged facts he asserts show his innocence.  See id.

27  / / /

28  / / /

2

1    Next, Plaintiff claims:

2    Clayton Gunn Jr. can also show that he stupidly/ignorantly hired one of
     the worst attorneys in Butte County's history to represent him.  Grady
3    Davis otherwise commonly referred to as "Shady Grady," or the "Butte
     Count Sell Out King," dragged Clayton Gunn Jr. to over an approximate
4    30-month period with approximately 30 plus court appearances.
     **EXHIBIT D**
5
     In the end, when the Judge was completely frustrated over having so many
6    court appearances was "not in the mood' for yet another delay by Mr.
     Davis, Mr. Davis pleaded with Clayton Gunn Jr. to take the plea deal
7    "wobbler" as explained above because Mr. Davis in his own words 'had
     not prepared for trial.'
8
     Yet all Mr. Davis had to do was file a motion to dismiss due to lack of
9    evidence by showing the Court that Clayton Gunn Jr. simply made a
     mistake and corrected it, illustrated by the actual document that Clayton
10   Gunn Jr. delivered to the alleged victim Robyn Hoffman to show there
     was absolutely no intent to commit fraud through false pretenses.  But Mr.
11   Grady is infamous for selling out his clients by his intentional incompetent
     and intentional neglectful acts in an ongoing effort to demonstrate his
12   ineffective counsel – in order to serve Defendant, Butte County District
     Attorney Michael Ramsey.
13
     ECF No. 16, pgs. 6-7.
14

15   Plaintiff states that, ultimately, the felony charge was reduced to a misdemeanor.  See id. at 7-8.

16   According to Plaintiff, in 1997 Defendant Ramsey "continued his campaign of

17   harassment" by directing Code Enforcement Officers to make unannounced visits to Plaintiff's

18   residence over a two-year period.  Id. at 8.  Plaintiff states that this occurred "[w]hile the Butte

19   County Planning Commission and the Butte County Board of Supervisors wrongfully delayed

20   Plaintiff use permit for a wedding facility use along with a concert venue."  Id.  Plaintiff claims:

21   Finally, Plaintiff was so exhausted and distraught over the harassment
     along with the Board of Supervisor's ridiculous 38 conditions of operation
22   he sued the County for continued harassment.  Listing the Code
     Enforcement Officers, along with Defendant Michael Ramsey out of the 8
23   Defendants.  **(EXHIBIT K)**.  Attorneys for Plaintiff Clayton Gunn Jr.
     were Robert Noel and Marjorie Knowler from San Francisco.  The case
24   was dropped due to the fact Plaintiff's attorneys were in jail because of the
     dog mauling that occurred at their residence.
25
     Id.
26

27   Plaintiff states that, he "ultimately accomplished a County wide initiative to eliminate the over

28   burdensome and restrictive use permit."  Id.

3

1    Next, Plaintiff claims that he was "falsely and maliciously" arrested in 2006 on

2    four felony counts of child endangerment, cultivation of marijuana, marijuana for sale, and felon

3    in possession of ammunition.  See ECF No. 16, pg. 8.  According to Plaintiff:

4        Plaintiff lived at a separate residence on ranch property and was
         confronted with over 20 laser dots on his chest from the Butte County
5        Interagency Task Force.  Plaintiff did not resist or he would have been
         shot.  Plaintiff was arrested and charged even though he had nothing to
6        due [sic] with children, marijuana, or being a Felon in possession of a
         firearm.  Defendant Michael Ramsey proved he had personal knowledge
7        of the false charges specifically to ammunition charges shown by his
         personal statements to the press regarding Plaintiff in referring to the
8        specific charges and why he dismissed them.  **(EXHIBIT J)**

9    Id. at 9.

10    Plaintiff alleges that, in 2016 and 2017, the Butte County Sheriff's Department

11    kept harassing him by making unannounced visits to his residence in a "bogus" investigation over

12    adult abuse concerning his mother, Marilyn Gunn.  See id.  Plaintiff contends that deputies

13    arrived several times to "falsely charge" him but never arrested him because his mother was in

14    the hospital.  See id.

15    Finally, Plaintiff alleges that, in 2019, he was wrongfully arrested and charged

16    with being a felon in possession of a firearm and ammunition.  See id.

17    In his amended complaint, Plaintiff outlines the following nine legal theories:

18        First Claim         Administrative Malicious Prosecution

19        Second Claim        Judicial Malicious Prosecution

20        Third Claim         False Arrest

21        Fourth Claim        False Imprisonment

22        Fifth Claim         Cruel and Unusual Punishment

23        Sixth Claim         Intentional Infliction of Emotional Distress

24        Seventh Claim       Violation of Due Process

25        Eighth Claim        Defamation and False Light

26        Ninth Claim         Campaign of Harassment of Violation of Civil
                              Rights
27
          See id. at 9-22.
28

4

Attached to the first amended complaint and referenced throughout are the following exhibits:[2]

| | |
|---|---|
| Exhibit A | A felony criminal complaint filed in the Butte County Superior Court on February 22, 2019, in case no. 19CE01039. |
| Exhibit B | Court minutes for an October 10, 2000, proceeding in case no. SCM008054. |
| Exhibit C | A January 21, 1998, "Plea of Guilty/No Contest – Felony" form in case no. CM8054. |
| Exhibit D | A "Criminal Case Summary" for case no. SCM008054. |
| Exhibit E | An April 8, 1999, Butte County Sheriff's Office "Briefing Bulletin" issued for Clayton E. Gunn, Jr. |
| | A felony criminal complaint filed in the Butte County Municipal Court on August 27, 1996, against Clay Edward Gunn, Jr., in case no. CM008054. |
| Exhibit F | A copy of the text of California Penal Code § 13125. |
| Exhibit G | A copy of the text of California Penal Code §§ 11115-11117. |
| Exhibit H | A felony criminal complaint filed in the Butte County Superior Court on October 20, 2006, against Cathy Dawn Garcia, Clay Edward Gunn, Marilyn Lila Gunn, and William Richard Tovar, in case no. CM025884. |
| Exhibit J | A newspaper article entitled "Gunn cleared on marijuana charges." |
| Exhibit K | A newspaper article entitled "Local promoter files suit against county." |
| Exhibit L | A newspaper article regarding the "Field of Dreams" initiative. |
| Exhibit M | A September 18, 2019, letter from the Law Enforcement Unit of the California Bureau of Firearms. |
| Exhibit N | A December 19, 2019, receipt from Madison Home Pharmacy. |
| Exhibit Y | Plaintiff's original complaint in this Court, filed on September 3, 2019. |
| Exhibit Z | A list of concert venues. |

See ECF No. 16, pgs. 25-63.

///

---

[2]    No exhibits are denoted as "Exhibit I," "Exhibit O," "Exhibit P," "Exhibit Q," "Exhibit R," "Exhibit S," "Exhibit T," "Exhibit U," "Exhibit V," "Exhibit W," or "Exhibit X."

1

## II. STANDARDS FOR MOTION TO DISMISS

2        In considering a motion to dismiss, the Court must accept all allegations of

3   material fact in the complaint as true.  See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007).  The

4   Court must also construe the alleged facts in the light most favorable to the plaintiff.  See Scheuer

5   v. Rhodes, 416 U.S. 232, 236 (1974); see also Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S.

6   738, 740 (1976); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam).  All

7   ambiguities or doubts must also be resolved in the plaintiff's favor.  See Jenkins v. McKeithen,

8   395 U.S. 411, 421 (1969).  However, legally conclusory statements, not supported by actual

9   factual allegations, need not be accepted.  See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009).

10  In addition, pro se pleadings are held to a less stringent standard than those drafted by lawyers.

11  See Haines v. Kerner, 404 U.S. 519, 520 (1972).

12        Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement

13  of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair

14  notice of what the . . . claim is and the grounds upon which it rests."  Bell Atl. Corp v. Twombly,

15  550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  However, in order

16  to survive dismissal for failure to state a claim under Rule 12(b)(6), a complaint must contain

17  more than "a formulaic recitation of the elements of a cause of action;" it must contain factual

18  allegations sufficient "to raise a right to relief above the speculative level."  Id. at 555-56.  The

19  complaint must contain "enough facts to state a claim to relief that is plausible on its face."  Id.  at

20  570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the

21  court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

22  Iqbal, 129 S. Ct. at 1949.  "The plausibility standard is not akin to a 'probability requirement,' but

23  it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id. (quoting

24  Twombly, 550 U.S. at 556).  "Where a complaint pleads facts that are 'merely consistent with' a

25  defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement

26  to relief."  Id. (quoting Twombly, 550 U.S. at 557).

27  / / /

28  / / /

1          In deciding a Rule 12(b)(6) motion, the Court generally may not consider materials

2    outside the complaint and pleadings.  See Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998);

3    Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994).  The Court may, however, consider: (1)

4    documents whose contents are alleged in or attached to the complaint and whose authenticity no

5    party questions, see Branch, 14 F.3d at 454; (2) documents whose authenticity is not in question,

6    and upon which the complaint necessarily relies, but which are not attached to the complaint, see

7    Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001); and (3) documents and materials

8    of which the court may take judicial notice, see Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir.

9    1994).

10          Finally, leave to amend must be granted "[u]nless it is absolutely clear that no

11   amendment can cure the defects."  Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per

12   curiam); see also Lopez v. Smith, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc).

13

14                          **III.  DISCUSSION**

15          In their motion to dismiss, the County Defendants argue that Plaintiff's first

16   amended complaint fails to state a claim for relief on any of the various legal theories alleged.

17   The County Defendants also argue that Defendants Ramsey and Tufaro are entitled to

18   prosecutorial and sovereign immunity.  Finally, the County Defendants contend that Defendants

19   Ramsey, Tufaro, Honea, and Thao are entitled to qualified immunity.

20          **A.          Failure to State a Claim**

21          The County Defendants contend Plaintiff's first amended complaint fails to state a

22   claim for relief on any of the various theories alleged.

23                 1.          First Claim

24          In his first claim, Plaintiff alleges administrative malicious prosecution arising

25   from Plaintiff's arrest on February 19, 2019.  See ECF No. 16, pgs. 9-13.  Plaintiff alleges this

26   claim arises under 42 U.S.C. § 1983.  See id. at 9.  Plaintiff claims Defendant Ramsey, who was

27   the Butte County District Attorney at the time, failed to "exercise proper training and discipline"

28   and allowed "wrongful acts committed" by Defendant Tufaro, a Deputy District Attorney.  Id. at

7

1    10.  Plaintiff alleges Defendant Butte County Superior Court (which has not yet been served in

2    this action) is also liable for failing to follow the law.  See id. at 11.  According to Plaintiff,

3    Defendant Butte County is responsible for failure to supervise, train, or discipline the Butte

4    County Superior Court.  See id. at 12.  Plaintiff further alleges that Defendants Butte County

5    Sheriff's Office and Honea, the Butte County Sheriff, are "culpable as administrators."  Id.

6    Plaintiff claims Defendant Thao is liable as a co-conspirator.  See id.  Finally, Plaintiff alleges

7    Defendant Tufaro should also be held liable "for his co-conspiratorial role prior to filing the

8    wrongful charges against Plaintiff. . . ."  Id. at 13.  Plaintiff references Exhibits F, G, H, J, and M

9    in this claim.  See id. at 9-13.

10            As to this claim, the County Defendants first contend the referenced Exhibit J – a

11   newspaper article entitled "Gunn cleared on marijuana charges" – fails to establish Defendant

12   Ramsey "knew of any prior dismissal of criminal charges. . . ."  ECF No. 20-1, pg. 5.  The

13   County Defendants also contend Plaintiff's allegations of failure to train, supervise, or discipline

14   the Butte County Superior Court fail because the County Defendants have no control over arms of

15   the state.  See id. at 5-6.

16            The Court agrees that Exhibit J fails to establish any knowledge on Defendants

17   Ramsey's part.  To the extent it shows that Plaintiff had been cleared on marijuana charges – a

18   fact not in dispute – there is no evidence Defendant Ramsey read the article and, therefore, knew

19   its contents.

20            The Court also agrees that allegations that the County Defendants are liable for

21   failure to train, supervise, or discipline the Butte County Superior Court, fail as a matter of law.

22   As the County Defendants correctly note, the Superior Court and, prior to consolidation of the

23   California state trial courts, the Municipal Court, are arms of the State of California and, as such,

24   not under the control of any of the County Defendants.  See Hyland v. Sonder, 117 F.3d 405, 413

25   (9th Cir. 1997), amended 127 F.3d 1135 (Superior Court); Franceshi v. Schwartz, 57 F.3d 828,

26   831 (9th Cir. 1995) (Municipal Court).

27   / / /

28   / / /

8

1    The Court also identifies flaws in the first claim not argued by the County

2  Defendants in their motion.  Specifically: (1) the Butte County Superior Court is immune from

3  suit; (2) Plaintiff fails to allege the elements of malicious prosecution as against the individual

4  defendants; and (3) Plaintiff fails to allege facts to support liability of the municipal entity

5  defendants.  Because the County Defendants have not discussed these flaws which, unless

6  corrected, would deprive this Court of subject matter jurisdiction, the Court addresses them sua

7  sponte.  See Fed. R. Civ. Pro. 12(h)(3).

8                    a.        Sovereign Immunity

9    The Eleventh Amendment prohibits federal courts from hearing suits brought

10  against a state both by its own citizens, as well as by citizens of other states.  See Brooks v.

11  Sulphur Springs Valley Elec. Coop., 951 F.2d 1050, 1053 (9th Cir. 1991).  This prohibition

12  extends to suits against states themselves, and to suits against state agencies.  See Lucas v. Dep't

13  of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per curiam); Taylor v. List, 880 F.2d 1040, 1045 (9th

14  Cir. 1989).  As an arm of the State of California, Defendant Butte County Superior Court is

15  immune from suit and should be dismissed with prejudice.  See Hyland, 117 F.3d at 413 (holding

16  that the Superior Court is an arm of the State of California).

17                    b.        Elements of Malicious Prosecution

18    A claim for malicious prosecution under § 1983 requires the plaintiff to allege:

19  (1) the defendant initiated a criminal prosecution of the plaintiff with a malicious motivation to

20  deny the plaintiff of equal protection or another constitutional right; (2) the prosecution lacked

21  probable cause; and (3) the prosecution was terminated in such a manner as to indicate the

22  plaintiff's innocence.  See Awabdy v. City of Adelanto, 368 F.3d 1062, 1066 (9th Cir. 2004); see

23  also Freeman v. City of Santa Ana, 68 F.3d 1180, 1189 (9th Cir. 1995).  The presence of

24  probable cause is an absolute defense to a claim of malicious prosecution.  See Haupt v. Dillard,

25  17 F.3d 285 (9th Cir. 1994).  As the Supreme Court noted in Heck v. Humphrey, the lack of

26  probable cause is an essential element of a malicious prosecution claims.  See 512 U.S. 477, 484

27  n.4.

28  / / /

9

1       Any liability for malicious prosecution necessarily relies on the conduct of the

2   individual defendants – the Butte County Sheriff (Defendant Honea), the arresting Deputy

3   Sheriff (Defendant Thao), the Butte County District Attorney (Defendant Ramsey), and the

4   Deputy District Attorney (Defendant Tufaro) – who are alleged to have been responsible for

5   Plaintiff's prosecution.  As to these individual defendants, Plaintiff alleges:

6           Defendant Ramsey

7           **Here,** Defendant, <u>Michael Ramsey</u>, was the District Attorney at the time
            of the wrongful arrest on February 19, 2019.  Due to failure to exercise
8           proper training and discipline under his administrative duty allowed
            Defendant to fall below the standard of a professional prosecutor by the
9           wrongful acts committed by Defendant Deputy District Attorney Michael
            F. Tufaro for Tufaro's prosecutorial misconduct by acting outside of his
10          scope with the intentional and malicious suppression of exculpatory
            evidence that Plaintiff Clayton Gunn, Jr., was not a convicted Felon at the
11          time of the arrest, but went ahead and charged him regardless of the know
            [sic] facts evidence through the 2019 California Penal Code under Section
12          13125 where "All basic information stored in state or federal criminal
            offender record information systems shall be recorded, when applicable
13          and reliable, in the form of the following standard data elements" (Which
            clearly there is a requirement to have statistics on the District Attorney's
14          Files as required by law).  (**EXHIBIT F, G, H**).  Such evidence would
            have made available on the wrongful and malicious arrest of Plaintiff
15          Clayton Gunn, Jr., in 2006 where he was charged as a convicted Felon in
            possession of ammunition.
16
            ECF No. 16, pgs. 10-11.
17
            Defendant Honea
18
            **BUTTE COUNTY SHERIFF'S DEPARTMENT ALONG WITH
19          DEFENDANT HONEA** is [sic] also culpable as administrators to allow
            such appalling conduct by Defendant Deputy Thao.  As Deputy Thao
20          clearly failed to act in [sic] a responsible, professional officer under color
            of law when he disregarded the fact that Plaintiff was no longer a
21          convicted Felon upon the creation of his perjured report submitted to the
            District Attorney's Office.
22
            ECF No. 16, pg. 12.
23
            Defendant Thao
24
            **DEFENDANT DEPUTY THAO** should also be responsible for being a
25          co-conspiratory [sic] for the malicious administrative prosecution due to
            the facts stated herein for his part as an actor in investigation or lack
26          thereof leading to the formal charges.  As Deputy, Thao knowingly and
            willingly committed perjury when he submitted false information in his
27          report through the omission for failing to identify that Plaintiff was no
            longer a convicted Felon and therefore no charges should have been
28          brought.  However, through Deputy Thao's willful, callous, malicious

                                        10

1   disregard for the truth in his intentional suppression of exculpatory
    evidence, along with his recklessness. . . .

2   ECF No. 16, pg. 12.

3   Defendant Tufaro

4   **DEFENDANT MICHAEL F. TUFARO** should also be held accountable
    for his conspiratorial role prior to filing the wrongful charges against
5   Plaintiff Clayton Gunn, Jr.  In his collaboration with Defendant Ramsey,
    Mr. Tufaro was willing to commit perjury knowing that Plaintiff was no
6   longer a Felon in possession of ammunition and a firearm, but under color
    of law charged Plaintiff anyway in order to pleas [sic] his boss Defendant
7   Ramsey. . . .

8   ECF No. 16, pg. 13.

9

10          The gravamen of Plaintiff's claim is that his arrest was based on information that

11  was untrue.  Inferring from this that any arrest warrant was issued without probable cause,

12  Plaintiff has not alleged facts to show that any of the individual defendants did so with the intent

13  to deprive Plaintiff of equal protection or any other constitutional right, an essential element of a

14  malicious prosecution claim under § 1983.  Rather, Plaintiff very specifically alleges the

15  individual defendants acted in order to please Defendant Ramsey.  Plaintiff has not explained

16  how pleasing Defendant Ramsey amounts to an abrogation of rights guaranteed under the

17  Constitution.  Moreover, while Plaintiff alleges that he had been cleared on the charges that led

18  to the malicious prosecution arising from the February 2019 arrest, Plaintiff has not alleged that

19  such prosecution concluded in a way to indicate Plaintiff's innocence, also an essential element.

20          Because it is possible Plaintiff can cure these defects, the Court finds that

21  Plaintiff's first claim should be dismissed with leave to amend.

22                         c.        Municipal Liability

23          Municipalities and other local government units are among those "persons" to

24  whom § 1983 liability applies. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978).

25  Counties and municipal government officials are also "persons" for purposes of § 1983. See id.

26  at 691; see also Thompson v. City of Los Angeles, 885 F.2d 1439, 1443 (9th Cir. 1989). A local

27  government unit, however, may not be held responsible for the acts of its employees or officials

28  under a respondeat superior theory of liability. See Bd. of County Comm'rs v. Brown, 520 U.S.

1  397, 403 (1997). Thus, municipal liability must rest on the actions of the municipality, and not of

2  the actions of its employees or officers. See id. To assert municipal liability, therefore, the

3  plaintiff must allege that the constitutional deprivation complained of resulted from a policy or

4  custom of the municipality. See id.  A claim of municipal liability under § 1983 is sufficient to

5  withstand dismissal even if it is based on nothing more than bare allegations that an individual

6  defendant's conduct conformed to official policy, custom, or practice. See Karim-Panahi v. Los

7  Angeles Police Dep't, 839 F.2d 621, 624 (9th Cir. 1988).

8           Here, Plaintiff alleges that his malicious prosecution claims arise under § 1983.

9  See ECF No. 16, pgs. 9, 13. Thus, the constitutional deprivation complained of is malicious

10  prosecution intended to deprive Plaintiff of equal protection or another constitutional right.  See

11  Awabdy, 368 F.3d at 1066.  In order to state a claim against the municipal entity defendants,

12  Plaintiff must therefore allege some policy, custom, or practice of the municipal entity

13  defendants which resulted in deprivation of equal protection of another constitutional right.

14  Plaintiff has failed to do so.  As discussed above, Plaintiff claims various individual defendants

15  acted to please the Butte County Sheriff, Defendant Honea.  It also appears from Plaintiff's

16  allegations that he believes Defendant Honea has a personal vendetta against him.

17           Again, because it is possible Plaintiff can allege an official policy, custom, or

18  practice on the part of any of the municipal entity defendants to cure this defect, Plaintiff should

19  be provided an opportunity to amend.

20           2.      All Remaining Claims

21           In his second claim, Plaintiff alleges judicial malicious prosecution. See id. at 13-

22  14.  Plaintiff states his claim is described "more particularly" in Exhibit Y, which is a copy of his

23  original complaint in this case. See id.  According to Plaintiff:

24           Here as particularly described in **EXHIBIT Y**, Plaintiff has shown to have
             met all the elements to a malicious prosecution.  "But for" the County of
25           Butte not properly supervising, disciplining, and training the Butte County
             Superior Court by not following the law in regards to Penal Code Section
26           13151 on three separate occasions as described herein; along with
             Defendant Sheriff Honea failing to supervise, train and discipline
27           Defendant Deputy Thao to follow proper investigative procedure to
             protect citizens' Constitutional deprivation of rights as described herein; to
28           the Defendant District Attorney Michael Ramsey from failing to properly

                                       12

1    supervise, train and discipline his Deputy District Attorneys from
2    preventing knowingly false indictments under penalty of perjury.

     Id. at 14.
3

4          In his third and fourth claims, Plaintiff alleges false arrest and false imprisonment.

5    See id. at 15-16.  In his fifth claim, Plaintiff alleges cruel and unusual punishment.  See id. at 17-

6    19.  In his sixth claim, Plaintiff alleges intentional infliction of emotional distress.  See id. at 19.

7    In his seventh claim, Plaintiff alleges violation of his due process rights.  See id. at 19-20.  In his

8    eighth claim, Plaintiff alleges defamation and false light.  See id. at 20-21.  In his ninth claim,

9    Plaintiff alleges a "campaign of harassment in violations [sic] of civil rights."  Id. at 21-22.  As

10   with his first claim, Plaintiff states all these claims are "more particularly described" in Exhibit Y.

11   See id. at 15, 16, 17, 19, 20, and 21.

12         In summary, the County Defendants argue as follows with respect to the second

13   through ninth claims:

14   | Second Claim | As to the second claim, the County Defendants assert that Plaintiff's allegations fail for the same reasons as the first claim.  See ECF No. 20-1, pg. 6. |

15

16   | Third Claim | As to the third claim, the County Defendants contend Plaintiff's allegations of false arrest are inconsistent and, therefore, implausible.  ECF No. 20-1, pg. 7. The County Defendants also state that, when read with facts pleaded in the original complaint, Plaintiff's third claim fails.  See id. at 8. |

17

18

19

20   | Fourth Claim | As to the fourth claim, the County Defendants contend Plaintiff cannot sustain a claim for false imprisonment. See ECF No. 20-1, pgs. 8-9.  According to the County Defendants, the analysis for false arrest and false imprisonment is the same and, given that an arrest warrant was issued for probable cause shown, both claims necessarily fail.  See id. |

21

22

23

24   | Fifth Claim | The County Defendants argue Plaintiff's fifth claim for cruel and unusual punishment under the Eighth Amendment fails because he had not been convicted when he was in custody and, as such, his claim cannot proceed under the Eighth Amendment.  See ECF No. 20-1, pgs. 9-10.  The County Defendants further contend that Plaintiff's fifth claim, which relates to medical treatment, fails because the County contracted with |

25

26

27

28   ///

13

1
2
an outside group – CFMG – to provide medical care inside the jail and that this entity would be responsible, not the County Defendants. See id. at 10.

3
4
5
6
7
**Sixth Claim**   As to the sixth claim, the County Defendants argue: (1) Plaintiff's claim for intentional infliction of emotional distress fails because Plaintiff fails to allege he exhausted administrative remedies under California Government Code § 905; and (2) in any event, Plaintiff has not pleaded sufficient facts to establish the elements of the claim under state law. See ECF No. 20-1, pgs. 10-11.

8
9
10
**Seventh Claim**   The County Defendants argue Plaintiff's seventh claim for violations of his due process rights fails because Plaintiff's claim does not comply with Federal Rule of Civil Procedure 8 and the pleading standards outlined in Iqbal. See ECF No. 20-1, pg. 12.

11
12
13
14
15
**Eighth Claim**   As to Plaintiff's eighth claim, the County Defendants cite American Consumer Pub. Ass'n, Inc. v. Margosian, 349 F.3d 1122 (9th Cir. 2003), and argue Plaintiff cannot state a claim for defamation, false light, or injury to reputation – which are state law tort claims – under Section 1983 because he does not plead facts to satisfy the "stigma-plus test." See ECF No. 20-1, pgs. 12-13.  The County Defendants also argue Plaintiff's eighth claim fails to satisfy Rule 8. See id. at 13.

16
17
**Ninth Claim**   Finally, the County Defendants argue Plaintiff's ninth claim fails because it does not comply with Rule 8. See ECF No. 20-1, pgs. 13-14.

18
19
20
21
22
23
24
25
26
27
28
While the Court finds the County Defendants' arguments are largely persuasive, they are not dispositive of the second through ninth claims.   The Court nonetheless finds that Plaintiff's second through ninth claims fail because they all rely upon a prior pleading which has been superseded.  Plaintiff states that his second through third claims are "more particularly described" in Exhibit Y, which is a copy of his original complaint. See ECF No. 16.  As a general rule, an amended complaint supersedes the original complaint. See Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992).  Therefore, the Court cannot refer to a prior pleading in order to make Plaintiff's amended complaint complete. See Local Rule 220.  An amended complaint must be complete in itself without reference to any prior pleading. See id.

/ / /

/ / /

14

1          Because Plaintiff relies upon a pleading which the Court cannot consider in

2    framing the second through ninth claims in his first amended complaint, it is impossible to

3    evaluate the sufficiency of Plaintiff's allegations.  Plaintiff should be provided an opportunity to

4    amend to allege all facts related to his second through ninth claims in a single pleading without

5    reference to any prior pleading.  In framing any amended pleading, Plaintiff should keep the

6    County Defendants objections, which are well taken, in mind.

7          **B.      Immunities**

8          The County Defendants assert various immunities.  Specifically, they argue

9    Defendants Ramsey and Tufaro are entitled to prosecutorial and sovereign immunity.  They also

10   contend Defendants Ramsey, Tufaro, Honea, and Thao are entitled to qualified immunity.

11               1.      Prosecutorial and Sovereign Immunity

12         Prosecutorial immunity protects eligible government officials when they are acting

13   pursuant to their official role as advocate for the state.  See Imbler v. Pachtman, 424 U.S. 409,

14   430 (1976).  This immunity extends to actions during both the pre-trial and post-trial phases of a

15   case.  See Demery v. Kupperman, 735 F.2d 1139, 1144 (9th Cir. 1984).  State prosecutors are

16   entitled to absolute prosecutorial immunity for acts taken in their official capacity.  See Kalina v.

17   Fletcher, 522 U.S. 118, 123-25 (1997).

18         Sovereign immunity under the Eleventh Amendment prohibits federal courts from

19   hearing suits brought against a state both by its own citizens, as well as by citizens of other states.

20   See Brooks v. Sulphur Springs Valley Elec. Coop., 951 F.2d 1050, 1053 (9th Cir. 1991).  This

21   prohibition extends to suits against states themselves, and to suits against state agencies.  See

22   Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per curiam); Taylor v. List, 880 F.2d

23   1040, 1045 (9th Cir. 1989).   A state's agency responsible for incarceration and correction of

24   prisoners is a state agency for purposes of the Eleventh Amendment.  See Alabama v. Pugh, 438

25   U.S. 781, 782 (1978) (per curiam); Hale v. Arizona, 993 F.2d 1387, 1398-99 (9th Cir. 1993) (en

26   banc).

27   / / /

28   / / /

1    The Eleventh Amendment also bars actions seeking damages from state officials

2   acting in their official capacities.  See Eaglesmith v. Ward, 73 F.3d 857, 859 (9th Cir. 1995); Pena

3   v. Gardner, 976 F.2d 469, 472 (9th Cir. 1992) (per curiam).  When deciding whether to prosecute,

4   a district attorney acts as an officer of the state, not the county or city.  See Weiner v. San Diego

5   County, 210 F.3d 1025, 1028 (9th Cir. 2000).

6    The Eleventh Amendment does not, however, bar suits against state officials

7   acting in their personal capacities.  See id.  Under the doctrine of Ex Parte Young, 209 U.S. 123

8   (1908), the Eleventh Amendment does not bar suits for prospective declaratory or injunctive

9   relief against state officials in their official capacities.  See Armstrong v. Wilson, 124 F.3d 1019,

10   1025 (9th Cir. 1997).  The Eleventh Amendment also does not bar suits against cities and

11   counties.  See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 n.54 (1978).

12    As to prosecutorial immunity, the County Defendants argue:

13   Here, based on long-settled principles, Defendant District Attorney
    Michael L. Ramsey and Deputy District Attorney Michael Tufaro are
14   entitled to absolute immunity from suit as to all of the allegations
    pertaining to all of his [sic] prosecutorial actions as to Plaintiff's criminal
15   prosecution.  This absolute immunity extends to Plaintiff's specific claims
    as to Defendant's [sic] initiation of the criminal suit against Plaintiff.
16   Therefore, the Court should also dismiss the Complaint against Defendant
    District Attorney Michael L. Ramsey and Deputy District Attorney
17   Michael Tufaro based on his [sic] absolute immunity.

18    ECF No. 20-1, pg. 14.

19   The County Defendants add that Ramsey and Tufaro are entitled to prosecutorial immunity under

20   state law.  See id. at 14-15.

21    As to sovereign immunity, the County Defendants contend: "Here, Plaintiff's

22   lawsuit against Ramsey and Tufaro are [is] based on the fact that they prosecuted Plaintiff" and,

23   as such, they are entitled to sovereign immunity under the Eleventh Amendment.  ECF No. 20-1,

24   pg. 16.

25    The Court is not entirely persuaded by the County Defendants' arguments, which

26   rely on the premise that the individual defendants acted in their official capacities.  Plaintiff does

27   not specifically allege any particular capacity when describing the defendants to his lawsuit.

28   Further, Plaintiff's allegation that Defendants Tufaro, Thao, and Ramsey acted in order to please

16

1    Defendant Honea, coupled with the allegation that a vendetta was being pursued, suggest

2    something other than official conduct.  The Court prefers further elucidation of Plaintiff's claims

3    before concluding either prosecutorial or sovereign immunity shields the individual defendants

4    from all liability.  Plaintiff should be provided an opportunity to amend to state whether the

5    individual defendants are sued in their official capacity, personal capacity, or both.

6                    2.        Qualified Immunity

7                    Government officials enjoy qualified immunity from civil damages unless their

8    conduct violates "clearly established statutory or constitutional rights of which a reasonable

9    person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  In general,

10   qualified immunity protects "all but the plainly incompetent or those who knowingly violate the

11   law."  Malley v. Briggs, 475 U.S. 335, 341 (1986).  In ruling upon the issue of qualified

12   immunity, the initial inquiry is whether, taken in the light most favorable to the party asserting the

13   injury, the facts alleged show the defendant's conduct violated a constitutional right.  See Saucier

14   v. Katz, 533 U.S. 194, 201 (2001).  If a violation can be made out, the next step is to ask whether

15   the right was clearly established.  See id.  This inquiry "must be undertaken in light of the specific

16   context of the case, not as a broad general proposition . . . ."  Id.  "[T]he right the official is

17   alleged to have violated must have been 'clearly established' in a more particularized, and hence

18   more relevant, sense:  The contours of the right must be sufficiently clear that a reasonable

19   official would understand that what he is doing violates that right."  Id. at 202 (citation omitted).

20   Thus, the final step in the analysis is to determine whether a reasonable officer in similar

21   circumstances would have thought his conduct violated the alleged right.  See id. at 205.

22                   When identifying the right allegedly violated, the court must define the right more

23   narrowly than the constitutional provision guaranteeing the right, but more broadly than the

24   factual circumstances surrounding the alleged violation.  See Kelly v. Borg, 60 F.3d 664, 667 (9th

25   Cir. 1995).  For a right to be clearly established, "[t]he contours of the right must be sufficiently

26   clear that a reasonable official would understand [that] what [the official] is doing violates the

27   right."  See Anderson v. Creighton, 483 U.S. 635, 640 (1987).  Ordinarily, once the court

28   concludes that a right was clearly established, an officer is not entitled to qualified immunity

1    because a reasonably competent public official is charged with knowing the law governing his

2    conduct.  See Harlow v. Fitzgerald, 457 U.S. 800, 818-19 (1982).  However, even if the plaintiff

3    has alleged a violation of a clearly established right, the government official is entitled to

4    qualified immunity if he could have ". . . reasonably but mistakenly believed that his . . . conduct

5    did not violate the right." Jackson v. City of Bremerton, 268 F.3d 646, 651 (9th Cir. 2001); see

6    also Saucier, 533 U.S. at 205.

7              The first factors in the qualified immunity analysis involve purely legal questions.

8    See Trevino v. Gates, 99 F.3d 911, 917 (9th Cir. 1996).  The third inquiry involves a legal

9    determination based on a prior factual finding as to the reasonableness of the government

10   official's conduct.  See Neely v. Feinstein, 50 F.3d 1502, 1509 (9th Cir. 1995).  The district court

11   has discretion to determine which of the Saucier factors to analyze first.  See Pearson v. Callahan,

12   555 U.S. 223, 236 (2009).  In resolving these issues, the court must view the evidence in the light

13   most favorable to plaintiff and resolve all material factual disputes in favor of plaintiff.  See

14   Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003).

15             The County Defendants contend:

16             Here, Defendants Ramsey, Tufaro, Honea, and Thao are entitled to
     qualified immunity because there is not identifiable law which shows
17   these Defendants' [sic] violated a clearly established law.  Plaintiff cannot
     meet his burden to demonstrate that qualified immunity is inappropriate
18   under the facts of this case.

19             ECF No. 20-1, pg. 16.

20             The Court rejects the County Defendants' argument because they themselves have

21   identified the applicable clearly established law.  For example, as discussed above and in the

22   County Defendants' brief, a civil rights action may be sustained on a claim of malicious

23   prosecution motivated by an intent to deprive someone of equal protection or another

24   constitutional right.  Whether Plaintiff can sustain such a claim remains to be seen upon further

25   amendment.  Until Plaintiff amends his underlying claims, a determination on qualified immunity

26   would be premature.  Plaintiff should be granted further leave to amend, after which the Court

27   may be able to evaluate the County Defendants' claim of qualified immunity.

28   / / /

18

1

**IV.  CONCLUSION**

2

Based on the foregoing, the undersigned recommends that:

3

1.      Defendant Butte County Superior Court be dismissed as immune;

4

2.      The County Defendants' motion to dismiss, ECF No. 20, be granted; and

5

3.      Plaintiff's first amended complaint be dismissed with leave to amend.

6

These findings and recommendations are submitted to the United States District

7

Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days

8

after being served with these findings and recommendations, any party may file written objections

9

with the Court.  Responses to objections shall be filed within 14 days after service of objections.

10

Failure to file objections within the specified time may waive the right to appeal.  See Martinez v.

11

Ylst, 951 F.2d 1153 (9th Cir. 1991).

12

13

Dated:  February 25, 2021

14

DENNIS M. COTA

15

UNITED STATES MAGISTRATE JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28